IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Nicole P., ) | |
| ) | |
|     *Plaintiff,* ) | |
| ) | Case No. 3:20-cv-50245 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| Kilolo Kijakazi, ) | |
| Acting Commissioner of Social Security,[1] ) | |
| ) | |
|     *Defendant.* ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nicole P. brings this action under 42 U.S.C. § 405(g) seeking a remand of the decision denying her disability insurance benefits.[2] For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded.

### I. Background

In September 2013, Plaintiff filed an application for disability insurance benefits alleging a disability beginning on August 2, 2010, because of degenerative disc disease, facet joint disease, disc bulge, back injury, anxiety, arthritis, spinal stenosis, and nasal disease. R. 142, 236. Plaintiff last worked as a caretaker for individuals with disabilities. However, in August 2009 Plaintiff suffered a work-related injury to her lower back. Plaintiff continued working, but she was injured again in June 2010. On August 2, 2010, Plaintiff stopped working because of her impairments. Although Plaintiff sought treatment for her back, she continues to complain of disabling pain.

---

[1] Kilolo Kijakazi has been substituted for Andrew Marshall Saul. Fed. R. Civ. P. 25(d).
[2] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c).

Following a hearing, an administrative law judge ("ALJ") issued a decision in October 2016, finding that Plaintiff was not disabled. R. 18-28. Plaintiff subsequently challenged the ALJ's decision in the district court. In October 2018, pursuant to the parties' agreed motion, the case was remanded for a new decision. R. 868. The remand order directed the ALJ to reevaluate Plaintiff's sleep and mental impairments, the medical opinions, and Plaintiff's subjective statements.

Following remand, in August 2019, Plaintiff testified at another hearing before the same ALJ that issued the first decision. Plaintiff's testimony focused on her back pain, sleep issues, and mental health issues. In March 2020, the ALJ issued a second decision again finding that Plaintiff was not disabled. R. 789-801. The ALJ found that Plaintiff had the following severe impairments: lumbar fact arthropathy, depression, parasomnia, hypersomnia, sleep-related eating disorder, sleep apnea, and obesity. The ALJ determined that through Plaintiff's date last insured, namely December 31, 2014, her impairments did not meet or medically equal a listed impairment. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions. Plaintiff was 35 years old on her date last insured.

Plaintiff appeals the ALJ's decision arguing that the ALJ erred in analyzing the testifying medical expert's opinions, her father's statement, and the RFC. Therefore, this Court will focus on the evidence relevant to the ALJ's evaluation of these issues in the discussion below.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id*. Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as

2

adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Accordingly, the reviewing court is not to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). A reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover, federal courts cannot build a logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 WL 5475480, at *5-7 (N.D. Ill. Oct. 29, 2014).

### III. Discussion

Plaintiff argues that remand is required because the ALJ: (1) improperly rejected the testifying medical expert's opinions; (2) improperly rejected her father's statement; and (3) determined an RFC that was unsupported by substantial evidence.

### A. Medication Side Effects

Plaintiff argues that the ALJ improperly adopted the testimony of the medical expert that testified at the first hearing, Dr. Ronald Semerdjian, over the testimony of the expert that testified at the second hearing, Dr. Alvin Stein. Although both experts testified that Plaintiff's impairments did not meet or equal a listed impairment, Plaintiff takes issue with the ALJ's rejection of Dr. Stein's additional testimony that the side effects of Plaintiff's current medications would prevent

3

her from working a full-time job. For the reasons stated below, this Court finds that a remand is required.

At the first administrative hearing in October 2015, the ALJ called Dr. Semerdjian, a medical expert board certified in internal medicine and pulmonary disease, to testify about Plaintiff's physical impairments. Dr. Semerdjian testified that Plaintiff's impairments did not meet or equal a listed impairment; however, her chronic pain caused functional limitations that limited her to light work with certain restrictions. R. 72-73.

At the second administrative hearing in August 2019, the ALJ called a new medical expert, Dr. Stein, who was board certified in internal medicine and medical oncology. Dr. Stein testified that although Plaintiff's physical impairments did not meet or equal a listed impairment, the six medications Plaintiff was currently taking for her pain and mental health issues caused side effects that would prevent her from working a full-time job. R. 842-48. Dr. Stein identified the following medications Plaintiff was taking at the time of the hearing: gabapentin, bupropion (an antidepressant), Celexa (an antidepressant), alprazolam (Xanax), cyclobenzaprine (a muscle relaxant), and hydrocodone with Tylenol (Norco). R. 842. Dr. Stein admitted that, other than hydrocodone, he did not know which medications Plaintiff was taking between August 2010 and December 2014. R. 842, 849.

Dr. Stein opined that Plaintiff's medications "are definitely causing neurocognitive effects, memory problems, drowsiness, confusion and she is on six central nervous system acting drugs, any one of which can cause fatigue, tiredness, drowsiness." R. 842. Dr. Stein based his opinion on his experience with patients taking a combination of the six medications and Plaintiff's testimony at the hearing. R. 851. Dr. Stein found that Plaintiff sounded sedated at the hearing and referenced her slurred speech and slow thought process. R. 846. Dr. Stein further opined that aside from the

4

side effects caused by Plaintiff's medications, she would be able to perform light work with certain restrictions. R. 846.

In evaluating this opinion evidence, the ALJ gave great weight to Dr. Semerdjian's opinion because:

> it is based on a review on the entirety of the record. He had the opportunity to listen to the claimant's testimony, as well as observe her. As a medical expert who is experienced in providing testimony for disability hearings, he also has a familiarity with the regulations that allows her [sic] to offer insight into the various ways an impairment might restrict an individual's ability to function. Finally, the medical expert's testimony is consistent with the medical evidence of record.

R. 798. The ALJ gave little weight to Dr. Stein's opinion that Plaintiff would not be able to sustain full-time employment for three main reasons:

> First, Dr. Stein specializes in internal medicine, and is, therefore, not able to provide accurate testimony on the claimant's mental health impairments. Second, Dr. Stein's observations of the claimant at the August 2019 hearing do not apply to her ability to function prior to the date-last-insured of December 31, 2014. Dr. Stein noted that there was no evidence prior to December 31, 2014 of the claimant complaining of the side effects he felt would render her disabled, i.e., medication induced sedation. Finally, Dr. Stein admitted that he based that opinion on the claimant's current presentation at the August 2019 hearing where he heard the claimant's "slowing words" when she testified. When questioned what mental health medications and narcotics claimant took prior to the date-last-insured, he testified that he did not know and that he was basing his opinion on the claimant's presentation at the August 2019 hearing, which, as noted, is nearly five years after the date-last-insured.

R. 798.

The Commissioner argues that the ALJ provided sufficient reasons for discounting Dr. Stein's opinion and properly considered the impact of medication side effects. This Court disagrees.

The ALJ largely discounted Dr. Stein's opinion as irrelevant because the period of disability at issue was between August 2010 and December 2014, and Dr. Stein based his opinion on Plaintiff's testimony at the August 2019 hearing and the medications she was taking at that

5

time. Yet, the ALJ made no attempt to determine if Plaintiff was or was not on these or similar medications during the relevant period based on a review of the record. This is not a case where there was no evidence in the record to determine what medications Plaintiff was taking. The medical records show that Plaintiff had consistently been taking Norco, Xanax, and Celexa, along with other pain medication, muscle relaxers, and antidepressants, throughout the relevant period. *See, e.g.*, R. 384, 393, 444, 495, 500, 511, 538, 692, 698, 716. Additionally, at the August 2019 hearing Plaintiff testified that she had been taking medication for her anxiety and depression, including Xanax, since 2010. R. 826-27. At the first hearing in October 2015, Plaintiff also testified that she had been taking Norco, Celexa, and Xanax since 2010. R. 48-49.

Moreover, although Dr. Stein testified that the combination of medications increases the likelihood that Plaintiff would suffer from medication side effects, any one medication could cause the side effects he described. R. 856. Dr. Stein also testified that Plaintiff was taking Norco for at least 10 years. R. 842. However, the ALJ did not address this portion of Dr. Stein's testimony or otherwise indicate that she did or not did not believe that Plaintiff was taking Norco during the relevant period.

The ALJ also discounted Dr. Stein's opinion because he specialized in internal medicine and therefore was "not able to provide accurate testimony on the claimant's mental health impairments." The fact that Dr. Stein was an internist is not enough to discount his opinion completely. A medical source's specialty is just one factor to consider when evaluating the opinion. *See* 20 C.F.R. § 404.1527(c)(5).[3] Even considering this factor, Dr. Stein's testimony

---

[3] The Social Security Administration has modified how they evaluate medical opinions. However, the new regulations apply only to disability applications filed on or after March 27, 2017. *Compare* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply.") *with* 20 C.F.R. § 404.1520c ("For claims filed (see § 404.614) on or after March 27, 2017, the rules in this section apply."). Plaintiff's application in this case was filed in 2013. Accordingly, this Court will reference 20 C.F.R. § 404.1527.

6

focused on the side effects of Plaintiff's pain and mental health medications, and only briefly addressed Plaintiff's mental health issues. However, the focus of Dr. Stein's testimony was that Plaintiff's "major impairments which keep her from being able to work are the drugs which she's taking." R. 842, 846. Dr. Stein testified that he based his testimony on his experience with patients taking a similar combination of Plaintiff's medications. R. 851. Again, the ALJ did not explain why Dr. Stein's experience would not qualify him to discuss the impact of Plaintiff's medications. If the ALJ found Dr. Stein unqualified because he was an internist, she should have summoned a qualified medical expert.

As Plaintiff points out, there is no medical opinion in the record that conflicts with Dr. Stein's testimony regarding the functional impact of Plaintiff's medications. Dr. Semerdjian, whose opinion the ALJ afforded great weight, did not consider the impact Plaintiff's medications would have on her RFC. Dr. Semerdjian testified only that he did not recall any specific references to the side effects of Plaintiff's medications in the record. R. 77.

Nevertheless, the Commissioner relies on this lack of evidence in Plaintiff's medical records to assert that "plaintiff's claim that medication side effects were not properly considered must fail." Defendant's Response at 7, Dkt. 25. However, the ALJ's brief reference to the lack of evidence in the medical records fails to address Dr. Stein's testimony that the lack of such evidence was not unusual because Plaintiff's treaters were likely concerned with her back pain and may not have spoken with her enough to get a sense of her neurocognitive impairment or side effects from other drugs she was taking. R. 851. While Plaintiff's failure to report side effects to her treaters would have been a factor for the ALJ to consider in evaluating whether Plaintiff's alleged symptoms are consistent with the record, the ALJ made no attempt to analyze this evidence. *See* 20 C.F.R. § 404.1529(c)(3)(iv) (requiring the ALJ to consider "[t]he type, dosage, effectiveness,

and side effects of any medication"); *see also* SSR 16-3p, 2016 WL 1119029. The ALJ also failed to evaluate, or even mention, other evidence in the record that Plaintiff experienced side effects from her medications. *See* 20 C.F.R. § 404.1527(c)(3) (stating that in assigning weight to an opinion, the ALJ must consider consistency "with the record as a whole"). This evidence included Plaintiff's statements in her disability reports, Plaintiff's testimony at the first and second administrative hearing, and Plaintiff's father's statement. *See* R. 60, 257, 275, 291, 305, 309, 820, 827, 835-36. Although the ALJ generally discounted Plaintiff's and her father's statements as inconsistent with the record, the ALJ did not address medication side effects.

The ALJ had a duty to develop a fair and complete record regarding the functional impact of Plaintiff's medications and could not just ignore evidence in the record suggesting that Plaintiff suffered from side effects of her medications without explanation. *See Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (explaining that the Seventh Circuit has "repeatedly forbidden" ALJs from cherry-picking only the medical evidence that supports their conclusions."); *Dunn v. Saul*, 794 Fed. App'x 519, 522 (7th Cir. 2019) ("Although under no obligation to address every piece of evidence in the record, an ALJ may not ignore an entire line of evidence contrary to his ruling.") (internal citation omitted). If the ALJ considered the impact of medication side effects and found it unsupported, she should have said as much in her decision instead of omitting any discussion of side effects when considering Dr. Stein's opinion and Plaintiff's RFC. Accordingly, a remand is required for the ALJ to properly consider the impact that medication side effects would have on Plaintiff's RFC. On remand, the ALJ should call a qualified medical expert who can review the medical record and opine about the combined effect of Plaintiff's various medications on her ability to work. *See Martinez v. Astrue*, 630 F.3d 693, 697-98 (7th Cir. 2011) (faulting the ALJ for not considering the interaction of the claimant's physical and mental problems because "[e]ven if

8

each problem assessed separately were less serious than the evidence indicates, the combination of them might well be totally disabling").

### B. Father's Statement

Plaintiff also argues that the ALJ improperly evaluated the statement of her father. In September 2014, Plaintiff's father submitted a third-party function report wherein he stated that Plaintiff's pain, sleep issues, and depression limited her ability to complete activities of daily living. R. 296-305. Plaintiff's father also filled out the section of the form relating to Plaintiff's functional limitations and specified that Plaintiff's conditions limited her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember, complete tasks, and concentrate. R. 302.

The ALJ afforded little weight to the statement of Plaintiff's father for the following reasons:

> First, since Mr. [P.] is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of her [sic] observations is questionable. Moreover, by virtue of his relationship as the claimant's father, his statements cannot be considered the observations of a disinterested third party witness whose opinion would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. Most importantly, significant weight cannot be given to this opinion because it, like the claimant's allegations, is simply not consistent with the preponderance of the opinions and observations by medical doctors in this case.

R. 799.

As Plaintiff points out, the regulations allow an ALJ to consider statements from third parties, including family members. *See* 20 C.F.R. § 404.1529(a), (c)(3); 20 C.F.R. § 404.1545(a)(3); SSR 16-3p, 2016 WL 1119029, at *7. Plaintiff argues, however, that the ALJ improperly discounted her father's statement because he was not medically trained and was not a disinterested third party. The Commissioner's only argument in response is that nothing

9

prohibits the ALJ from considering these factors. Defendant's Response at 15, Dkt. 25. The Commissioner then makes the conclusory argument that because the ALJ found that Plaintiff's father's statement was not consistent with the medical opinions, the ALJ did not err in giving little weight to his statement.

The fact that Plaintiff's father was not medically trained to "make exacting observations" of Plaintiff's impairments by itself is not a proper basis to discount his statement. *See Dunn*, 794 Fed. App'x at 523 ("[T]he ALJ's explanation that he discounted the daughter's testimony because she was not a medical professional does not adequately explain his decision to give little weight to her testimony."); *Sylvia C. v. Saul*, No. 19 C 0624, 2020 WL 1189290, at *8 (N.D. Ill. Mar. 12, 2020) ("The regulations permit testimony from 'other persons' such as family members without requiring them to have medical training.") (citation omitted). Between 2013 and 2014, Plaintiff was living with her father. R. 42, 445, 829-30. Accordingly, at the time Plaintiff's father submitted his statement in September 2014, he would have been very familiar with Plaintiff's functional limitations. Additionally, while Plaintiff's father is not a disinterested third-party, his familial relationship with Plaintiff alone is not a valid reason to discount the symptoms and limitations he outlined in his statement. *See Sylvia C.*, 2020 WL 1189290, at *8 ("It would be both unfair and inefficient for the SSA to seek this type of third-party evidence and then automatically discount it based on the claimant's relationship with the third parties from whom the evidence is sought.").

The ALJ also discounted the statement from Plaintiff's father because it was "not consistent with the preponderance of the opinions and observations by medical doctors in this case." Although consistency with the medical opinions in the record is a valid basis to evaluate a third-party statement, the ALJ failed to explain any inconsistency. *See Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013) (holding the ALJ erred in discounting testimony based on a familial

10

relationship without explaining what part of the testimony is credible and what is not). An ALJ cannot simply say that "statements about the individual's symptoms are (or are not) supported [by] or consistent" with the record. SSR 16-3p, 2016 WL 1119029, at *9. There were several medical opinions provided in this case. Without further explanation from the ALJ, this Court cannot trace the path of the ALJ's reasoning for discounting Plaintiff's father's statement. Accordingly, upon remand the ALJ should identify which statements from Plaintiff's father she did or did not find consistent with the evidence or medical opinions in the record.

## C. RFC

Lastly, Plaintiff argues that the ALJ's RFC determination is not based on substantial evidence because the ALJ failed to properly analyze the statements from Dr. Stein, Plaintiff, and Plaintiff's father. Specifically, Plaintiff argues that the ALJ failed to account for the side effects of her medications and her need to frequently shift positions, take breaks, and lie down to reduce her pain. Because the Court is remanding for the ALJ to properly evaluate the opinion from Dr. Stein, the impact of any side effects from Plaintiff's medications, and the statements from Plaintiff's father, the ALJ will be required to reassess the RFC determination. Accordingly, this Court will not address Plaintiff's specific arguments relating to the RFC. However, on remand, the ALJ should fully account for and explain the reasons for including or not including limitations in the RFC relating to the side effects of Plaintiff's medications and her need to frequently shift positions, take breaks, and lie down to reduce her pain based on a thorough evaluation of the evidence in the record and Plaintiff's subjective symptoms.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceeding consistent with this opinion.

Date: August 2, 2021     By: *Lisa A. J.*
Lisa A. Jensen
United States Magistrate Judge